The PEOPLE of the State of
Colorado, Complainant,

v.

Barbara J. FELKER,
Attorney–Respondent.

No. 88SA318.

Supreme Court of Colorado,
En Banc.

Feb. 27, 1989.

Linda Donnelly, Disciplinary Counsel, George S. Meyer, Deputy Disciplinary Counsel, Denver, for complainant.

No appearance for respondent Barbara J. Felker.

LOHR, Justice.

In this grievance proceeding, the disciplinary counsel filed a formal complaint against the respondent, Barbara J. Felker, charging her with four counts of professional misconduct. The complaint alleged that the respondent aided a nonlawyer in the unauthorized practice of law, neglected her clients' affairs, engaged in conduct involving deceit, failed to return files to a client after withdrawing from his case, handled a legal matter without adequate preparation, and abandoned her law practice without taking steps to avoid foreseeable injury to her clients. The respondent failed to file an answer to the complaint, and a default was entered against her, with the result that the complaint was deemed admitted. *See* C.R.C.P. 241.13(b). Subsequently, the respondent was notified that a hearing was scheduled for December 8, 1987. This hearing was for the purpose of determining the form of discipline to be imposed. *See* C.R.C.P. 241.13(b).

The respondent participated at the hearing by telephone from her location in Maryland and confirmed that she wished to admit all of the allegations of the complaint and focus the hearing on the appropriate level of discipline to be imposed. A hearing board of the grievance committee heard testimony by the respondent, considered the admitted allegations of the complaint, and entered findings and conclusions. The hearing board recommended that the respondent be suspended from the practice of law in the State of Colorado for three years. The board also recommended that as a condition of reinstatement, the respondent should be required to retake and pass the bar examination and otherwise show by clear and convincing evidence that she is rehabilitated and is fit to practice law. The board further recommended that she be assessed the costs of this grievance proceeding. A hearing panel unanimously approved the findings and recommendations of the board. We considered the findings and recommendations and issued an order to the respondent to show cause why more severe discipline should not be imposed, including the possibility of disbarment. The respondent did not submit a response to the show cause order. We now adopt the findings and conclusions of the grievance committee. However, we determine that the appropriate discipline for the respondent's professional misconduct is disbarment and assessment of the costs of this grievance proceeding.

I.

The respondent was admitted to the Colorado bar on October 16, 1981, and is registered as an attorney on the records of this court. She is therefore subject to the jurisdiction of this court and of the grievance committee in all matters relating to the practice of law. C.R.C.P. 241.1(b), 241.-2. The following facts are summarized from the grievance committee's findings, which are based on the allegations in the complaint, all of which have been admitted by the respondent.

II.

From 1983 until May of 1986, the respondent operated a law office in Avon, Colorado, where she employed a "law clerk," Martin Blitstein. Blitstein was under suspension by the Florida bar as a result of a felony conviction that he had sustained in the United States District Court for the District of Colorado. On January 2, 1987, the Colorado Supreme Court permanently enjoined Blitstein from the unauthorized practice of law in Colorado. *Unauthorized Practice of Law Committee v. Blitstein*, No. 86SA414 (Colo.Sup.Ct. January 2, 1987). The matters giving rise to this disciplinary action against the respondent involve her dealings with four of her former clients, Ronald Farmer, Linda Ryczek, James A. Schuman, and Kendra E. Homer.

A. *Ronald Farmer*

■ The respondent conducted a client interview with Farmer in October of 1984. During the interview, the respondent called

Blitstein into her office and represented to Farmer that Blitstein was her associate and a civil attorney and drug lawyer. Blitstein rendered detailed legal advice to Farmer during that interview. The hearing board concluded that the respondent's actions in this matter constituted aiding a nonlawyer in the unauthorized practice of law in violation of DR 3–101(A) [ABA Model Rule 5.5(b)].

### B. *Linda Ryczek*

■ Ryczek retained the respondent in March of 1984 to represent her in a dissolution of marriage action. In April of 1984 Ryczek and her husband reached a stipulated agreement regarding temporary orders. The stipulation provided that the husband would pay child support and the rent on Ryczek's apartment. The stipulation further provided that the parties would have joint custody of their minor son, Michael. Although the agreement contained no provision permitting the husband to continue living in the marital home, he maintained his residence at Ryczek's apartment where he had physical custody of Michael.

Ninety percent of the legal advice given to Ryczek was provided by Blitstein. After conducting numerous conferences with Ryczek concerning her desire to move back into the family home and obtain custody of Michael, Blitstein prepared a motion for a temporary restraining order requesting that the husband be barred from the family home and that Ryczek be allowed to retake possession of the home and have physical custody of Michael. The motion was granted. On Blitstein's advice, Ryczek attempted to serve the temporary restraining order on her husband. Unbeknownst to Ryczek, however, and without her consent, her husband's counsel and the respondent had reached an agreement to vacate the temporary restraining order.

In December 1984, the respondent and opposing counsel entered into a stipulation for modification of the temporary orders. The modification did not alter the husband's obligation to pay family support. However, on January 3, 1985, opposing counsel wrote to the respondent to confirm a supposed agreement that the husband would not have to provide family support until the matter was heard by the court. This agreement was made by the respondent without Ryczek's knowledge or consent.

A permanent orders hearing was set for January 25, 1985. Approximately seven days before the hearing, Blitstein called Ryczek and told her that the respondent's office was going to withdraw from the case. Ryczek contacted the respondent and convinced her to remain on the case. The respondent's only preparation for the hearing was accomplished in the car on the way to the courthouse, and the respondent warned Ryczek not to mention to anyone that she had received legal advice from Blitstein. At the hearing, the respondent instructed Ryczek to wait in the hall. During the hearing, the respondent failed to seek orders for temporary maintenance arrearage and child support arrearage, failed to seek orders for the equitable division of the property, including a profit sharing plan and a 1983 tax refund, failed to seek reimbursement for the attorney fees unpaid by the husband, failed to seek relief for funds taken from Michael's trust account, failed to seek reimbursement for certain household expenses owed by the husband, and failed to consult with Ryczek in making various agreements, including an agreement that child support would terminate when Michael reached the age of eighteen years. Through new counsel, Ryczek was later able to secure a modification of the permanent orders requiring child support until the time of emancipation.

The hearing board concluded that the respondent's conduct in permitting Blitstein to render legal advice to Ryczek constituted aiding a nonlawyer in the unauthorized practice of law in violation of DR 3–101(A) [ABA Model Rule 5.5(b)]. The board also found that the respondent's conduct with respect to Ryczek's permanent orders hearing constituted handling a legal matter without adequate preparation in violation of DR 6–101(A)(2) [ABA Model Rule 1.1].

## C. *James A. Schuman*

Schuman had received temporary disability benefits for an injury sustained in 1980 while he was employed by a trash-removal company in Vail, Colorado. He contacted the respondent in 1984 to pursue a permanent, partial disability settlement and to investigate the possibility of a wrongful discharge action or other tort action against his former employer. When Schuman went to the respondent's office for an initial interview, he was referred to Blitstein, who took information, discussed fee arrangements, and rendered detailed legal advice. Although Blitstein took Schuman into the respondent's office for a brief talk, Schuman was under the clear impression that Blitstein was his lawyer. Blitstein rendered legal advice concerning tactics, chances of success, and legal precedents while in the respondent's presence. Blitstein indicated to Schuman that he had a good case, and Schuman believed that the respondent's office would proceed on both the workers' compensation claim and a civil action.

The respondent did not file a workers' compensation claim or make application for a hearing until June 14, 1985, when a hearing date was set for April 22, 1986. In the meantime, Schuman had moved to Illinois and had purchased an airline ticket to fly back to Colorado to attend the hearing. The day before the hearing, the respondent called Schuman, maintaining that she was sick and that the hearing would have to be continued. The respondent then filed a motion to withdraw from the case without telling Schuman or advising him to seek new counsel.

In May 1986, the respondent abruptly closed her practice in Avon, Colorado, and moved to Maryland. On May 27, 1986, Schuman wrote to the respondent in Maryland, objected to her withdrawal, and complained about the progress of his case. Although Schuman requested a response, none was forthcoming. On June 25, 1986, Schuman again wrote to the respondent and requested that she return all of his files. Receiving no reply, Schuman retained new counsel, who wrote to the respondent on July 22, 1986, requesting Schuman's files. The respondent never responded to this request and had not returned the files as of the date of the grievance committee hearing.

The hearing board concluded that the respondent had aided a nonlawyer in the unauthorized practice of law in violation of DR 3–101(A) [ABA Model Rule 5.5(b)] by allowing Blitstein to give legal advice to Schuman. The hearing board further concluded that the respondent neglected a legal matter entrusted to her in violation of DR 6–101(A)(3) [ABA Model Rule 1.3] by taking no action on Schuman's tort claim and by failing to file his workers' compensation claim until June 1985, although she had been retained in 1984 to do so. The board also found and concluded that the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1–102(A)(4) [ABA Model Rule 8.4(c)] when she falsely told Schuman that she was canceling his hearing because of illness. In fact, she was not ill but had decided to abandon her practice. The respondent also violated DR 1–102(A)(4) [ABA Model Rule 8.4(c)] by lying to committee counsel regarding the return of Schuman's files. In addition, the respondent's withdrawal from the Schuman matter was improper in violation of DR 2–110(A)(2) [ABA Model Rule 1.16(d)] because she gave Schuman insufficient notice of her intention to withdraw, failed to return his file, and took no steps to avoid foreseeable injury to his interests. Finally, the board concluded that by ignoring the requests made by Schuman, his lawyer, and the grievance committee for Schuman's files, the respondent failed to deliver property of a client in violation of DR 9–102(B)(4) [ABA Model Rule 1.15(b)].

## D. *Kendra E. Homer*

In February 1984, Homer retained the respondent to pursue a workers' compensation claim and to collect unpaid wages for overtime and on-call time from Homer's former employer, Eagle County. While at the respondent's office, Homer initially spoke with Blitstein although the respon-

dent later attended the meeting. Homer was under the impression that Blitstein was an attorney, and it was he who made arrangements to take the case.

Over the next two years, the respondent did little or nothing on Homer's behalf. In February 1986, the respondent filed a workers' compensation claim and made an entry of appearance on behalf of Homer. Then, in May 1986, without notice to Homer, the respondent withdrew from the workers' compensation matter and closed her office. Homer was unable to locate either the respondent or Blitstein. After retaining new counsel to pursue her claim for unpaid wages, Homer discovered that the statute of limitations barred her claim.

■ The hearing board concluded that the respondent had aided a nonlawyer in the unauthorized practice of law in violation of DR 3–101(A) [ABA Model Rule 5.5(b)]. The board further concluded that the respondent had neglected a legal matter entrusted to her in violation of DR 6–101(A)(3) [ABA Model Rule 1.3] in that she took no action on Homer's claims, with the result that Homer's wage claim was barred by the statute of limitations. Finally, the hearing board concluded that the respondent improperly withdrew from the Homer matter in violation of DR 2–110(A)(2) [ABA Model Rule 1.15(b)] in that she took no steps to notify her client of her intention to withdraw or to avoid foreseeable prejudice to the rights of her client.

### E. *General Conclusions*

In addition to the numerous specific violations of the Code of Professional Responsibility arising out of the respondent's dealings with these four clients, the hearing board concluded that by this same misconduct the respondent violated both DR 1–102(A)(1) (violating a disciplinary rule) [ABA Model Rule 8.4(a)] and C.R.C.P. 241.6 (misconduct by a lawyer constituting grounds for discipline). Therefore, grounds for discipline exist under C.R.C.P. 241.6(1) (any act or omission that violates the provisions of the Code of Professional Responsibility) and C.R.C.P. 241.6(2) (any act or omission that violates accepted rules or standards of legal ethics).

### III.

■ Upon consideration of the recommendations of the grievance committee, this court issued a rule to show cause why more severe discipline, including the possibility of disbarment, should not be imposed for the respondent's professional misconduct. The respondent did not file a response. We now conclude that disbarment is the appropriate discipline. In determining the sanction to be imposed, our task is to select a form of discipline that is most suited to the facts and circumstances of this particular case. *People v. Grenemyer*, 745 P.2d 1027, 1029 (Colo.1987); *People v. Morley*, 725 P.2d 510, 518 (Colo.1986). To this end, the grievance committee's "disciplinary recommendation is advisory only, and not binding on this court." *People v. Grenemyer*, 745 P.2d at 1029.

The ABA *Standards for Imposing Lawyer Sanctions* (1986) (ABA Standards) provide guidelines to be used by courts in imposing sanctions following a determination of lawyer misconduct. *See* ABA Standard 1.3. The hearing board concluded that a number of the ABA Standards applied to the respondent's professional misconduct.

ABA Standard 7.0 applies to the charges of assisting in the unauthorized practice of law and improper withdrawal from representation. ABA Standard 7.1 recommends disbarment "when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." Included among the violations of duties owed to the profession are assisting in the unauthorized practice of law and improper withdrawal from representation. *See* ABA Standard 7.0. Of the four instances of aiding in the unauthorized practice of law found to have been committed by the respondent, the hearing board found that only one client, Ryczek, suffered actual injury and that such injury consisted of

paying for legal services performed by Blitstein that were ineffective and harmful. Although the hearing board did not specifically conclude that the respondent had acted with intent to obtain a benefit for herself or another, she certainly reaped some financial benefit from Blitstein's legal services rendered on behalf of her office.

As to the charges of improper withdrawal from representation, the hearing board found that the respondent's conduct caused actual injury to two former clients, Schuman and Homer. In the Schuman matter, the respondent's improper withdrawal caused Schuman to purchase a plane ticket needlessly and required him to hire a new lawyer who was handicapped in the performance of legal services because he lacked the benefit of the respondent's files. In the Homer matter, as a result of the respondent's improper withdrawal Homer had to hire new counsel to pursue her compensation claim. The hearing board's findings, however, contain no suggestion that the respondent by this misconduct intended to benefit herself or another. *See* ABA Standard 7.1.

ABA Standard 4.41, which applies to the charges of neglect and abandonment in the Schuman and Homer matters, recommends disbarment when a lawyer abandons the practice or engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client. The hearing board found that both Schuman and Homer were injured by the respondent's conduct.

The ABA Standards do not suggest disbarment for the remaining charges. However, the addition of these perhaps less serious infractions only reinforces our conclusion that the respondent's conduct reflects a pattern of disregard for both her clients' needs and the standards of conduct that govern members of the legal profession. As to the inadequate preparation charge, we agree with the hearing board that the respondent was at least negligent in determining whether she was sufficiently prepared to be deemed competent to represent Ryczek at the permanent orders hearing. *See* ABA Standard 4.53 (repri-

mand generally appropriate when lawyer is negligent in determining whether she is competent to handle a legal matter and causes injury or potential injury to a client). With regard to the charge that the respondent misrepresented to Schuman the reason that she obtained a continuance of his hearing, we agree with the hearing board that the respondent's failure to provide her client with accurate information adversely reflects on her fitness to practice law. *See* ABA Standard 4.63 (reprimand generally appropriate when lawyer negligently fails to provide a client with accurate information and causes injury or potential injury to the client); ABA Standard 5.13 (reprimand generally appropriate when lawyer knowingly engages in conduct involving dishonesty, fraud, deceit, or misrepresentation and adversely reflecting on the lawyer's fitness to practice law). Finally, as to the respondent's failure to deliver Schuman's files as requested, we agree with the hearing board that ABA Standard 4.13, which recommends a reprimand when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client, is applicable.

In sum, the ABA Standards call for sanctions ranging from disbarment to reprimand for the various types of professional misconduct in which the respondent has engaged. In concluding that a three-year suspension was the most appropriate sanction for the respondent's misconduct, the hearing board identified both aggravating and mitigating factors that could be considered under ABA Standard 9.0. The mitigating factors were (1) absence of a prior disciplinary record, *see* ABA Standard 9.32(a); (2) absence of a dishonest or selfish motive, *see* ABA Standard 9.32(b); (3) personal or emotional problems, *see* ABA Standard 9.32(c); and (4) physical or mental disability or impairment related to alcohol abuse, *see* ABA Standard 9.32(h). The aggravating factors were: (1) a pattern of misconduct, *see* ABA Standard 9.22(c); (2) multiple offenses, *see* ABA Standard 9.22(d); (3) refusal to acknowledge wrongful nature of conduct, *see* ABA Standard 9.22(g); and (4) indifference to making restitution, *see* ABA Standard 9.22(j). In addi-

tion to these aggravating and mitigating factors, the hearing board mentioned several other relevant circumstances. Specifically, it noted that the four instances of misconduct were all rooted in the same cause (implicitly, alcoholism), that they all occurred during the same two-year period and that, with the exception of the Homer matter involving the loss of a potential wage claim because of the running of the statute of limitations, none of the instances of misconduct resulted in serious injury. The hearing board also noted that the wage claim was "speculative" in nature. The hearing board took all these competing factors into consideration and concluded that suspension would be more appropriate than disbarment.

We cannot take such a lenient view of the repeated instances of professional misconduct giving rise to this proceeding. In our view, the respondent continually disregarded the rights and expectations of her clients by permitting a nonlawyer to manage their legal matters while she neglected their cases. Moreover, the respondent's abrupt abandonment of her practice and her failure to take any steps whatsoever to protect her clients from prejudice resulted in serious injury to at least one client, who forever lost his opportunity to pursue a legal claim. This apparent crass indifference to the basic responsibilities a lawyer owes her client is inexcusable. While it is impossible to identify precisely all of the tangible and intangible injuries occasioned by the respondent's repeated acts of misconduct, such acts strike at the heart of the legal profession by destroying public confidence and are sufficiently injurious to warrant severe discipline. *See People v. Martinez*, 739 P.2d 838 (Colo. 1987); *cert. denied* — U.S. ——, 108 S.Ct. 1003, 98 L.Ed.2d 970. In light of the number of ethical violations committed by this respondent and her failure to defend her actions by either answering the grievance complaint or seeking to demonstrate to this court why disbarment should not be imposed, we believe that disbarment is justified. *See People v. Meyers*, 192 Colo. 103, 556 P.2d 80 (1976) (respondent disbarred for flagrant disregard of his professional

responsibilities to several clients); *People v. Whiting*, 189 Colo. 253, 539 P.2d 128 (1975) (respondent disbarred for closing his office and leaving state without advising any of his clients and abandoning their pending matters). A less severe sanction would depreciate the seriousness of the respondent's repeated acts of misconduct in the eyes of both the profession and the public. *See People v. James*, 731 P.2d 698 (Colo.1987) (respondent's continued practice of law during period of suspension, failure to protect client's legal interests by timely filing of lawsuit, and failure to appear and defend himself against the disciplinary charges demonstrated a callous disregard of the disciplinary rules and warranted disbarment); *People v. Kendrick*, 646 P.2d 337, 340 (Colo.1982) (public has a right to expect that a lawyer who acts irresponsibly and with callous disregard for the expectations of his clients will be disciplined appropriately).

Accordingly, we order that the respondent be disbarred and that her name be stricken from the roll of attorneys licensed to practice law in this state. The respondent is further ordered to pay the costs of these proceedings in the amount of $165.91 by tendering this sum within sixty days of this date to the Colorado Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500S, Denver, Colorado, 80202.