Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 2, 2020

**2020 CO 77**

**No. 19SC86, *Freirich v. Rabin*—Probate Law—Attorney-Client Privilege—Duty
of Confidentiality.**

A decedent's personal representative subpoenaed the decedent's former

attorney for the decedent's legal files.  The district court quashed the subpoena,

but a division of the court of appeals reversed that order.  The division held that

client files are "property" of the decedent under section 15-12-709, C.R.S. (2020),

so the personal representative takes possession of them, and that the personal

representative holds the attorney-client privilege for the decedent.

The supreme court holds that a decedent's complete legal files are not the

decedent's "property" under section 15-12-709.  Legal files belong to the lawyer,

except for documents having intrinsic value or directly affecting valuable rights.

And lawyers' duty to surrender certain papers to former clients flows from

professional ethics, not property law.  Further, the supreme court holds that the

decedent holds the attorney-client privilege after death, not the personal

representative.  Both case law and the policy that underlie the privilege compel

that result.  But the supreme court also holds that the act of appointing a personal representative impliedly waives both the attorney-client privilege and Colorado Rule of Professional Conduct 1.6's duty of confidentiality as necessary for the administration of the estate.  Accordingly, the supreme court reverses the judgment of the court of appeals and remands the case for further proceedings.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

## 2020 CO 77

---

### Supreme Court Case No. 19SC86
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 18CA160

---

### In re Estate of Louis Rabin, deceased.

### Petitioner:

Mark Freirich,

v.

### Respondent:

Claudine Rabin.

---

### Judgment Reversed
*en banc*
November 2, 2020

---

**Attorneys for Petitioner:**
Cohen Black Law, LLC
Nancy L. Cohen
Nicole Marie Black
       *Denver, Colorado*

**Attorneys for Respondent:**
Mark J. Fischer, Esq., Inc.
Mark J. Fischer
       *Steamboat Springs, Colorado*

Legal Tree, LLC
Lisel A.T. Petis
       *Steamboat Springs, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1 When Louis Rabin died, he left everything to his widow, Claudine Rabin.[1] He also named her as his personal representative to manage his estate in probate, a task that would prove more challenging than she'd anticipated. Louis's former wife, Suyue Rabin, made a claim against the estate based on a couple of promissory notes. These notes—totaling $200,000 and payable to Suyue upon Louis's death—were executed while Louis was married to Claudine. But Claudine didn't know the notes existed until she fielded the claim.

¶2 Wanting more information, Claudine asked Louis's longtime attorney, Mark Freirich, for all of Louis's legal files, most of which had nothing to do with the notes. He refused, citing confidentiality concerns. She then subpoenaed the files, placing two time-honored legal principles on a collision course: client-lawyer confidentiality (given practical effect by the attorney-client privilege and Colorado Rule of Professional Conduct 1.6) and a personal representative's duty to settle a decedent's estate.

¶3 We hold that (1) Colorado's Probate Code doesn't grant a personal representative a general right to take possession of all of a decedent's legal files as "property" of the estate; (2) a decedent's lawyer is ordinarily prohibited from

---

[1] Because some individuals in this case share a last name, we will refer to those individuals by their first names.

disclosing a decedent's legal files, even to the personal representative; but (3) a decedent's lawyer may provide the personal representative with otherwise privileged or confidential documents if such disclosure is necessary to settle the decedent's estate.[2]

## I. Facts and Procedural History

¶4 Freirich served as Louis's attorney for over thirty years. During that time, he handled dozens of matters for Louis. As relevant here, Freirich helped prepare two promissory notes that became payable to Louis's former wife, Suyue, upon Louis's death.[3]

¶5 Louis died testate in 2017. His will made no mention of the notes. Instead, it simply gave his entire estate to his widow, Claudine. Louis also named her as his personal representative, granting her "full power and authority to sell, transfer,

---

[2] We recognize that the decedent in this case died with a will and is thus a "testator." *See Testator*, Black's Law Dictionary (11th ed. 2019) ("Someone who has made a will; esp., a person who dies leaving a will."). For ease of reference, however, we use the more general "decedent." *See Decedent*, Black's Law Dictionary (11th ed. 2019) ("A dead person, esp. one who has died recently.").

[3] It seems that Louis and Suyue entered into only a single agreement for him to pay her $200,000 upon his death. But there are apparently two copies of this agreement: one from August 2007 and another notarized copy from March 2008. Although the agreements, absent the notarization on the March 2008 copy, look identical to us, the parties intermittently refer to multiple promissory notes. Thus, out of an abundance of caution, we refer to two promissory notes instead of one.

grant, convey, exchange, lease, mortgage, pledge or otherwise encumber or dispose of any or all of the real or personal property of my estate." Freirich wasn't involved in drafting this will.

¶6 Once Claudine began probate proceedings, Suyue filed a claim against the estate for payment of the promissory notes. Claudine's attorney, Mark Fischer, testified that Claudine had no prior knowledge of the notes. So, seeking to investigate the validity of the claim and believing that Freirich might have drafted the notes, Fischer contacted Freirich and requested Louis's legal files. Freirich responded by asking him to "address why the information . . . is not covered by the attorney-client privilege." Fischer later subpoenaed Freirich for the files.

¶7 Freirich moved to quash the subpoena, arguing that producing Louis's full set of files (which, according to Freirich, encompasses about forty-five individual files) would cause undue burden and expense and the "attorney-client privilege has not been waived." Fischer then contacted Freirich, clarifying that he was "seeking the paperwork in [Freirich's] files that may have been generated around [the date of the notes] to understand the consideration" for them.

¶8 Freirich eventually provided the documents he had regarding the promissory notes, which included copies of the notes and two pages of Freirich's handwritten notes. He did so after concluding that Suyue's presence during his discussions with Louis had vitiated any privilege that would otherwise exist.

4

¶9 Still, Claudine sought production of the rest of the files. Freirich responded that he didn't have "any additional information regarding the underlying debt reflected in the Promissory Note[s]"; his duty of confidentiality under Colorado Rule of Professional Conduct 1.6 prevented him from revealing more; and his refusal to comply with the subpoena was "consistent with what [he] believe[d] to be [Louis's] wishes." Claudine countered that Freirich had to produce the files because they were Louis's property, and section 15-12-709, C.R.S. (2020), grants a personal representative the right to take possession of a decedent's property; Louis waived his attorney-client privilege by nominating her as his personal representative, and the privilege now belongs to Louis's estate; and Freirich's duty of confidentiality didn't otherwise prevent remittance of Louis's files to her, since Louis also waived his right to confidentiality by nominating her as the personal representative.

¶10 After a hearing, the trial court granted Freirich's motion to quash. Without addressing Claudine's alleged entitlement to the files under section 15-12-709, the trial court found that Louis's attorney-client privilege survived his death; Louis's estate didn't become the privilege holder, so neither it nor the personal representative could waive the privilege "to compel Mr. Freirich to turn over his files"; and Freirich could not "dispense with the privilege in order to facilitate the[] probate proceedings."

¶11 Claudine filed a motion to reconsider, but she and Suyue settled Suyue's claim against the estate before the trial court ruled on that motion. The court later denied the motion as moot.

¶12 Claudine appealed, seeking the rest of the files. A division of the court of appeals reversed the trial court's order quashing the subpoena. *In re Estate of Louis Rabin*, 2018 COA 183, ¶ 2, __ P.3d __. The division reasoned that client files are the property of the client. *Id.* at ¶¶ 17, 28 (citing *People v. Felker*, 770 P.2d 402, 407 (Colo. 1989)). So, under section 15-12-709, "a personal representative 'has a right to' client files held by an attorney for a decedent, except where a will provides otherwise." *Estate of Rabin*, ¶ 18 (quoting § 15-12-709).

¶13 The division also held that a personal representative becomes the attorney-client-privilege holder: The personal representative "succeeds to the rights and obligations of the Estate's decedent, effectively 'stepping into the shoes' of the decedent." *Id.* at ¶ 24 (quoting *Colo. Nat'l Bank v. Friedman*, 846 P.2d 159, 163 (Colo. 1993)). Accordingly, "disclosing the privileged communications to the holder of the privilege does not itself violate the privilege." *Id.*

¶14 Freirich filed a petition for certiorari review, which we granted.[4]

---

[4] We granted certiorari to review the following issues:

1. Whether a decedent's legal files are property within the meaning of section 15-12-709, C.R.S. (2019).

## II. Analysis

¶15 After identifying the standard of review, we examine whether section 15-12-709 entitles a personal representative to take possession of a decedent's full set of legal files. Because section 15-12-709 grants a personal representative only the right to a decedent's "property," and we conclude clients have no property rights in their complete files, it does not. We next address whether the attorney-client privilege or a lawyer's duty of confidentiality under Rule 1.6 otherwise prevents a lawyer from producing a deceased client's legal files. Because both the attorney-client privilege and the duty of confidentiality survive a client's death, a lawyer is generally prohibited from disclosing a client's files, even to the personal representative, *except* as necessary to settle the decedent's estate.

---

2. Whether a decedent's personal representative becomes the holder of the decedent's attorney-client privilege upon the decedent-client's death.

3. Whether the Rules of Professional Conduct permit a lawyer to reveal information relating to the representation of a deceased client to the decedent-client's personal representative.

4. Whether the court of appeals erred in holding that the personal representative had a right to the decedent's legal files.

7

## A. Standard of Review

¶16 We review de novo issues of statutory interpretation, *Beren v. Beren*, 2015 CO 29, ¶ 11, 349 P.3d 233, 238; application of the attorney-client privilege, *People in Interest of A.N-B.*, 2019 COA 46, ¶ 9, 440 P.3d 1272, 1276–77; and "questions of law regarding the Rules of Professional Conduct," *Mercantile Adjustment Bureau, LLC v. Flood*, 2012 CO 38, ¶ 18, 278 P.3d 348, 354.

## B. Client Files as "Property" Under Section 15-12-709

¶17 Section 15-12-709, part of the Probate Code, states in relevant part that

> [e]xcept as otherwise provided by a decedent's will, *every personal representative has a right to, and shall take possession or control of, the decedent's property*; except that any real property or tangible personal property may be left with or surrendered to the person presumptively entitled thereto unless or until, in the judgment of the personal representative, possession of the property by the personal representative will be necessary for the purposes of administration.

(Emphasis added.) Thus, whether section 15-12-709 entitles Claudine to take possession or control of Louis's legal files depends on whether they qualify as his "property."

¶18 Both parties rely on Colorado Rule of Professional Conduct 1.16(d). That rule states,

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, *surrendering papers and property to which the client is entitled* and refunding any advance payment of fee or expense that

8

has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Colo. RPC 1.16(d) (emphasis added). Specifically, the parties dispute whether Freirich's obligation to surrender Louis's "papers and property" upon termination of the attorney-client relationship vested in Louis a property right to his legal files that passed to Claudine under section 15-12-709.

¶19 Freirich recognizes his duty under Rule 1.16(d), yet he argues that Louis's right to access his files was an *intangible* property right and that section 15-12-709's specific reference to "real property or tangible personal property" limits the statute's scope to exclude forms of intangible property. Claudine counters that Freirich's duty under Rule 1.16(d) vested in Louis a tangible property right to the "papers" that comprise his legal files that passed to her as personal representative. But, according to Claudine, even if Louis had nothing more than an intangible property right to access his files, Claudine could still take control of that right under section 15-12-709.

¶20 We agree with Claudine that section 15-12-709 grants a personal representative the right to take possession or control of all of a decedent's property, whether tangible or intangible, unless the decedent's will states otherwise. The Probate Code defines "property" to include "both real and personal property or any interest therein and anything that may be the subject of ownership." § 15-10-201(42), C.R.S. (2020). This court has previously interpreted

9

that definition to include intangible property rights. *See Price v. Sommermeyer*, 577 P.2d 752, 755 (Colo. 1978) (concluding that the Probate Code's definition of "property" includes a potential right of indemnity, no matter the "intangible character []or the contingent nature" of that right).

¶21 And contrary to Freirich's assertion, section 15-12-709's later reference to "real property or tangible personal property" doesn't limit the statute's reach to those two categories. The statute mentions those types of property only to clarify that a presumptive recipient may take possession of such property during estate administration. It omits reference to intangible property because the very nature of intangible property prevents its recipient from taking physical possession of it, *see Intangible*, Black's Law Dictionary (11th ed. 2019) ("Not capable of being touched."), not because section 15-12-709 encompasses only real property and tangible personal property.

¶22 But whether section 15-12-709 reaches *intangible* property doesn't tell us whether it grants Claudine access to the files. Instead, the relevant question is whether Louis had *any* property right in them at all that would grant her access.

¶23 Although Rule 1.16(d) required Freirich to provide Louis with "papers and property to which the client is entitled" upon termination of the attorney-client relationship, that duty is grounded in ethics, not property law. *Corrigan v. Armstrong, Teasdale, Schlafly, Davis & Dicus*, 824 S.W.2d 92, 97 (Mo. Ct. App. 1992)

10

("'Surrendering papers and property to which the client is entitled' is one example of a step an attorney must take to protect [a former client's] interest. But, this duty . . . need not be supported or justified by any property concepts." (quoting Mo. Sup. Ct. R. 4-1.16)); Colo. Bar Ass'n Ethics Comm., Formal Op. 104, at 2 (revised Sept. 2018) ("[A] client's entitlement [under Rule 1.16(d)] is not completely defined by traditional concepts of property and ownership. Rather, the entitlement is based on the client's right to access the file related to the representation so as to enable continued protection of the client's interests.").[5] Moreover, Rule 1.16(d)'s reference to "papers and property" suggests that a client's property is distinguishable from "[a] client's files . . . relating to a matter that the lawyer would usually maintain in the ordinary course of practice." Colo. RPC 1.16A cmt. 1 ("A lawyer's obligations with respect to client 'property' are distinct [from obligations with respect to a client's files].").

¶24     In keeping with the Colorado Rules of Professional Conduct's distinction between a lawyer's papers and a client's property, we conclude that a personal

---

[5] We recognize that "Formal Ethics Opinions are issued for advisory purposes only and are not in any way binding on the Colorado Supreme Court." *Formal Ethics Opinions*, Colo. Bar Ass'n, https://www.cobar.org/ethicsopinions [https://perma.cc/UJ2S-CEED]. Still, these opinions are persuasive authority. *See, e.g.*, *In re Fisher*, 202 P.3d 1186, 1196 (Colo. 2009) (citing a formal opinion from the Colorado Bar Association).

11

representative does not acquire a right to take possession of a decedent's legal files under section 15-12-709 except for "documents having intrinsic value or directly affecting valuable rights, such as securities, negotiable instruments, deeds, and wills." Colo. RPC 1.16A cmt. 1. Those items are the client's property. *See* Restatement (Third) of the Law Governing Lawyers § 46 cmt. a (Am. Law Inst. 2000) (differentiating between client files and "writings that qualify as property . . . because of their value, for example cash, negotiable instruments, stock certificates and other writings constituting presumptive proof of title, and collectors' items such as literary manuscripts"). For the purposes of section 15-12-709, the rest of the files are the lawyer's property.[6]

¶25 Further, the personal representative does not take possession or control of some intangible right to access the deceased client's files. Rule 1.16(d) requires lawyers to surrender certain papers to the client when the representation ends, but that responsibility is an ethical duty owed to the client, not something the client

---

[6] This case does not raise, nor do we mean to answer, the question of what documents in a client's legal files, if any, a lawyer may withhold from a living client under Rule 1.16(d) at the termination of the relationship. Certain courts have evaluated that issue in terms of which documents are the property of the client and which belong to the lawyer. ABA Comm. on Ethics & Pro. Resp., Formal Op. 471, at 1 (2015). We agree with the American Bar Association that the question of who owns what is distinct from the scope of a lawyer's professional duty to surrender papers to former clients. *See id.*

legally *owns*. *See Own*, Black's Law Dictionary (11th ed. 2019) ("[T]o have legal title to."). Thus, a lawyer's ethical duty to surrender papers to former clients does not pass to the personal representative under the Probate Code's definition of "property." *See* § 15-10-201(42) ("'Property' means both real and personal property or any interest therein and anything that may be the subject of ownership.").

¶26 The division mistakenly relied on *Felker* to conclude that legal files are client property. *See Estate of Rabin*, ¶ 17. In *Felker*, the grievance committee (through a hearing board) had found that a lawyer's failure to deliver files to a client was a failure to deliver property under the then-controlling Code of Professional Responsibility. 770 P.2d at 405. This court, reviewing the board's disciplinary recommendation, applied the American Bar Association's *Standards for Imposing Lawyer Sanctions* to hold that the appropriate consequence for that violation was a reprimand because the lawyer had been merely negligent. *Felker*, 770 P.2d at 406–07. Because the lawyer "admit[ted] all of the allegations," *id.* at 403, this court did not address whether the board had correctly interpreted the Code of Professional Responsibility, and we certainly did not hold that, under Colorado law, legal files are client property.

¶27 In sum, clients have no property right, tangible or intangible, to their full legal files under section 15-12-709. Accordingly, the division erred in concluding

13

that this section granted Claudine the power to take possession or control of Louis's complete files upon his death.

## C. Disclosure of a Deceased Client's Legal Files

¶28 Although Freirich had no duty under section 15-12-709 to provide Claudine with all of Louis's legal files, Claudine still contends that Freirich should have disclosed them in response to her subpoena because the estate steps into Louis's shoes with respect to both the attorney-client privilege and the duty of confidentiality under Rule 1.6. Freirich disagrees, and so do we. To demonstrate why, we begin our analysis by describing how the privilege and the Rule overlap and diverge.

¶29 Both the attorney-client privilege and Rule 1.6 ensure client-lawyer confidentiality. Colo. RPC 1.6 cmt. 3 ("The principle of client-lawyer confidentiality is given effect by related bodies of law: the attorney-client privilege, the work-product doctrine and the rule of confidentiality established in professional ethics."). Their protections each survive a client's death. *Wesp v. Everson*, 33 P.3d 191, 194 (Colo. 2001) ("[T]he attorney-client privilege generally survives the death of the client . . . ."); Colo. RPC 1.9(c) ("A lawyer who has formerly represented a client in a matter . . . shall not thereafter . . . reveal information relating to the representation except as these Rules would permit or require . . . ."); Colo. Bar Ass'n Ethics Comm., Formal Op. 132, at 1 (2017) ("A

14

lawyer's duty of confidentiality continues after the death of a client."). Yet the doctrines apply differently to safeguard a deceased client's legal files.

¶30 The attorney-client privilege protects communications between a client and an attorney for the purpose of obtaining legal advice, whether that advice pertains to litigation, a transaction, or any other legal service. § 13-90-107(1)(b), C.R.S. (2020); *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000) ("The attorney-client privilege extends only to matters communicated by or to the client in the course of [legal representation] . . . . [I]t does not protect any underlying and otherwise unprivileged facts . . . ."). It yields when the client has expressly or impliedly waived it or an exception applies. *Wesp*, 33 P.3d at 198, 200. The privilege prevents attorneys from "be[ing] examined without the consent of [their] client[s]." § 13-90-107(1)(b).

¶31 The duty of confidentiality is broader than the attorney-client privilege and prohibits disclosure of any "information relating to the representation of a client" unless the client consents or an exception applies. Colo. RPC 1.6(a), (b). It applies "not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source," Colo. RPC 1.6 cmt. 3, both inside and outside of judicial proceedings, *see* Colo. RPC 1.6 cmt. 15; Colo. RPC 1.6 cmt. 3. Inside a proceeding, however, the duty of confidentiality yields to "court order[s]," Colo. RPC 1.6(b)(8), including subpoenas, Colo. RPC 1.6 cmt. 15.

15

But, even in the face of a court order, Rule 1.6 permits lawyers to reveal information related to a representation only "to the extent the lawyer reasonably believes necessary." Colo. RPC 1.6(b). Thus, the duty obligates lawyers to "assert on behalf of the client all nonfrivolous claims that the [subpoena] is not authorized by other law or that the information sought is protected against disclosure by the attorney client privilege or other applicable law." Colo. RPC 1.6 cmt. 15.

¶32    Here, none of the exceptions to the attorney-client privilege or the duty of confidentiality are relevant except consent. So, when Fischer originally requested all of Louis's files from Freirich, the duty of confidentiality applied, unless Louis waived it, because Fischer was asking for "information relating to the representation of a client." Colo. RPC 1.6(a). And when Claudine subpoenaed Freirich, the duty, if it wasn't waived, compelled him to assert any non-frivolous claims of attorney-client privilege. *See* Colo. RPC 1.6 cmt. 15. Finally, the attorney-client privilege shielded (from the subpoena) all confidential communications in the files between Louis and Freirich for the purpose of obtaining legal advice unless Louis waived the privilege or Claudine became the privilege holder. *See* § 13-90-107(1)(b).

¶33    With this general framework in mind, we turn to Claudine's specific assertions regarding the privilege and the duty.

16

## 1. Attorney-Client Privilege

¶34    Clients can, of course, expressly waive the attorney-client privilege in their wills or anywhere else, but Louis did not do that.  Instead, Claudine argues, by virtue of the responsibilities attendant to her status as personal representative, she became the attorney-client-privilege holder after Louis's death.  In fact, she contends that this court concluded as much in *People v. Palomo*, 31 P.3d 879, 885 (Colo. 2001), and *Friedman*, 846 P.2d at 163.  So, according to Claudine, Freirich could have provided her with Louis's files without violating the privilege.

¶35    Contrary to Claudine's assertion, however, this court has never addressed who, if anyone, holds the attorney-client privilege for a client after death.  Neither *Palomo* nor *Friedman* even involved the attorney-client privilege: *Palomo* held that a defendant couldn't assert the physician-patient privilege on behalf of a murder victim, 31 P.3d at 885, while *Friedman* addressed whether a personal representative could be held liable for tortious interference with the decedent's contract, 846 P.2d at 171–72.[7]

---

[7] Although *Friedman* states that "a personal representative succeeds to the rights and obligations of the Estate's decedent, effectively 'stepping into the shoes' of the decedent," that language is a quotation from the underlying district court's order, which this court included in its factual summary.  846 P.2d at 163.  It did not originate in this court and does not reflect this court's jurisprudence on the attorney-client privilege.

17

¶36 More importantly, Claudine's position runs counter to this court's broader articulation of the attorney-client privilege. "[T]he attorney-client privilege is personal with the client," so "the privilege may be waived only by the client." *People v. Madera*, 112 P.3d 688, 690 (Colo. 2005) (quoting *Losavio v. Dist. Ct.*, 533 P.2d 32, 35 (Colo. 1975)). Designating the personal representative as the privilege holder would also undercut our holding in *Wesp* (that the privilege survives a client's death) by expressly permitting the personal representative to access a deceased client's privileged communications and to reveal them to third parties.

¶37 The purpose underlying the attorney-client privilege—to encourage clients to confide in their attorneys—also cautions against such an approach. "Open and honest communication between attorney and client . . . furthers the attorney's ability to serve [the] client's interests," and, "[a]bsent assurances that communications will remain confidential, clients may be reluctant or unwilling to seek legal advice or to confide fully in their attorney." *Wesp*, 33 P.3d at 196. "Posthumous disclosure of [confidential] communications may be as feared as disclosure during the client's lifetime." *Id.* at 200 (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 407 (1998)). Since clients may share information with their attorney that they wouldn't with their personal representative, retaining the deceased client as the privilege holder encourages frank communications between

18

client and attorney during the client's life. *See Swidler & Berlin*, 524 U.S. at 407 ("Knowing that communications will remain confidential even after death encourages the client to communicate fully and frankly with counsel.").

¶38 Claudine doesn't dispute that clients may share information with their attorneys that they wouldn't want disclosed to their personal representatives. Yet she contends that an attorney can simply warn a client that the personal representative will have access to privileged material after the client's death, and clients who don't want the personal representative to have access to certain materials should state as much in their wills. But informing clients that their communications could one day be disclosed to the client's personal representative might render any number of sensitive topics off limits, particularly where, as here, the personal representative is a family member of the decedent and a devisee under the will. *See id.* ("Clients may be concerned about reputation, civil liability, or possible harm to friends or family.").

¶39 And we decline to place on clients a duty to protect their confidential communications from later disclosure. The privilege "ordinarily protect[s]" confidential attorney-client communications. *Wesp*, 33 P.3d at 196. It would turn the privilege on its head to require that a client affirmatively designate a confidential communication as protected from later disclosure.

¶40 Thus, in light of *Wesp* and the policies that underlie the attorney-client privilege, we conclude that a client remains the attorney-client-privilege holder even after death. But that result doesn't render all confidential communications between the attorney and a deceased client privileged forevermore. When there has been no explicit waiver, a client's actions before death can impliedly waive the privilege.

¶41 We analyze the possibility of implied waiver in light of the role of the personal representative under Colorado law. A personal representative undertakes certain statutory duties with respect to estate administration. *E.g.*, § 15-12-703(1), C.R.S. (2020) ("A personal representative has a duty to settle and distribute the estate of the decedent . . . ."); § 15-12-703(4) ("[A] personal representative . . . has the same standing to sue and be sued in the courts of this state and the courts of any other jurisdiction as his decedent had immediately prior to death."). A decedent nominates a personal representative precisely because the decedent wants that individual to administer the decedent's estate.

¶42 To effectively carry out those duties (as well as any other duties specified in the will), a personal representative may need access to material otherwise protected by the attorney-client privilege. Thus, by nominating a personal representative, a client impliedly waives any claim of attorney-client privilege with respect to communications necessary for estate administration, unless the

client expressly manifested the intent to maintain the privilege. *See Wesp*, 33 P.3d at 198 ("To prove an implied waiver, there must be evidence showing that the privilege holder, 'by words or conduct, has impliedly forsaken his claim of confidentiality with respect to the communication in question.'" (quoting *Miller v. Dist. Ct.*, 737 P.2d 834, 838 (Colo. 1987))). A decedent's former attorney may therefore provide a personal representative with privileged information necessary for the personal representative to settle the estate.[8]

¶43 Accordingly, the division erred in concluding that Claudine, as the personal representative, became the attorney-client-privilege holder after Louis's death. But Louis did impliedly waive the privilege with respect to communications necessary to administer his estate by appointing her as his personal representative. The attorney-client privilege couldn't shield any otherwise privileged

---

[8] "[T]he burden of establishing a waiver is on the party seeking to overcome the privilege." *Miller*, 737 P.2d at 838. So a personal representative has the burden of proving that privileged material is necessary for estate administration. Evaluating such an assertion by the personal representative might require the court to conduct an *in camera* review of the relevant materials. *See Madera*, 112 P.3d at 690. Although Claudine argues that personal representatives won't know what to ask for, claims against the estate should shed light. And such claims must be made within a short statutory window. *See* § 15-12-803, C.R.S. (2020). Moreover, a personal representative need not wait for a claim against the estate before asking the decedent's lawyer for documents the personal representative perceives to be necessary to administer the estate. Any resulting disputes may be resolved by the probate court on an ad hoc basis.

communications necessary to settle Suyue's claim, although we recognize that Freirich already provided Claudine with the file regarding the promissory notes.

## 2. The Duty of Confidentiality

¶44 Like the attorney-client privilege, a lawyer's duty of confidentiality is not absolute. It too can be waived. Unable to point to an explicit waiver, Claudine argues that Louis impliedly authorized disclosure of his files to her by naming her as the personal representative.

¶45 "[A] lawyer is impliedly authorized to make disclosures about a client when appropriate in carrying out the representation." Colo. RPC 1.6 cmt. 5. Therefore, release is appropriate if "the attorney has reasonable grounds for concluding that release of the information is impliedly authorized in furthering the former client's interests in settling [the] estate." D.C. Bar, Ethics Op. 324, at 2 (2004). So a decedent's former attorney may provide the personal representative with confidential information necessary to settle the estate unless the decedent has expressly indicated otherwise. But the attorney cannot provide a decedent's complete legal files to the personal representative *unless* the decedent gave informed consent for such broad disclosure in the will or elsewhere.

¶46 To hold otherwise would drastically undermine a lawyer's duty of confidentiality to a deceased client. It would grant the personal representative authority to request, from every one of a decedent's former attorneys, the

22

decedent's entire legal history, regardless of subject matter and the needs of the estate.

¶47   There is no evidence that all of Louis's legal files were necessary to administer the estate. Thus, Freirich had a professional duty of confidentiality under Rule 1.6 to withhold all unnecessary information related to his representation of Louis. And when Claudine subpoenaed files that she did not need for estate administration, the duty of confidentiality obligated Freirich to make all non-frivolous objections (including the assertion of attorney-client privilege for any confidential communications made for the purpose of obtaining legal advice).

## III.  Conclusion

¶48   The division erred by reversing the district court's order quashing the subpoena. Accordingly, we reverse that portion of the court of appeals' judgment and remand this case for further proceedings consistent with this opinion.

23